**JONATHAN D. KIRK (16083)**
**KIRK LAW**
180 S 100 W #1158
Pleasant Grove, Utah 84062
Phone: (801)980-0388
Email: jonathan@kirklawutah.com
*Attorney for Hybrid International LLC*

---

THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re<br><br>WARREN DUNN BARBER<br>　　　Debtor.<br>———————————————<br><br>HYBRID INTERNATIONAL LLC<br>　　　Plaintiff,<br><br>v.<br><br>WARREN DUNN BARBER,<br>　　　Defendant. | Bankruptcy Case 24-20401<br>(Chapter 13)<br><br>Judge WILLIAM T THURMAN<br><br><br>**AMENDED ADVERSARY COMPLAINT**<br>**(include missing pages with no other changes)**<br><br>Adversary Proceeding No. 24-02110 |

Plaintiff, Hybrid International LLC ("**Hybrid**") complains against Warren Dunn Barber

("**Warren**")[1], as follows:

### PARTIES

1.　　　Hybrid is a carbon fines processing company in Nevada owned by Johnathon

Schultz ("**Schultz**").

2.　　　Warren is an individual Chapter 13 debtor residing in Salt Lake or Washington

County.

---

[1] As is customary when pleadings reference multiple individuals who share the last name, Hybrid herein refers to Warren Barber as Warren and Max Barber as Max, with no disrespect or informality intended.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over the subject matter of this adversary proceeding

pursuant to the provisions of 28 U.S.C. § 1334. The adversary proceeding relates to Warren's

Chapter 13 Case No. 24-20401 now pending in the United States Bankruptcy Court for the

District of Utah. This matter is a core proceeding under 28 U.S.C. § 157.

4.     Venue is proper in this Court under the provisions of 28 U.S.C. § 1409.

## ALLEGATIONS RELATED TO THE INTENTIONAL
## MISREPRESENTATION JUDGMENT AGAINST WARREN

5.     On April 21, 2019, Hybrid[2] filed suit against Scotia International of Nevada Inc.

("**Scotia**") in Nevada state court.

6.     Scotia removed the action to the United States Court for the District of Nevada,

case no. 2:19-cv-02077-JCM-EJY.

7.     Hybrid filed an amended complaint in August 2020, adding Warren and his son,

Max (collectively, the "**Barbers**"), as a party to that action.

8.     Scotia and the Barbers filed an answer and counterclaim in October 2020.

9.     On October 27, 2020, Hybrid served discovery requests, including requests for

admission, on Scotia and the Barbers.

10.    On November 13, 2020, the Court stayed the discovery response deadline,

including for the requests for admission, to December 30, 2020.

11.    On December 21, 2020, the Nevada court issued another order re-setting the

deadline for discovery responses to February 16, 2021.

---

[2] Johnathan Schultz is a plaintiff in the Nevada case. Mr. Schultz owned Hybrid. For simplicity, additional actions to enforce the resulting judgment are proceeding in Hybrid's name only.

12.     On December 28, 2020, the Court, responding to a request for clarification, stated that no further extension in time from the February 16, 2021 deadline for responses would be entertained. That Order stated that Hybrid may move to compel and seek sanctions if Scotia and the Barbers failed to respond to pending discovery, regardless of whether they retained counsel on or before the due date.

13.     On February 23, 2021, Hybrid filed its Motion for Order to Show Cause

14.     On April 22, 2021, the Nevada court granted Hybrid's Motion for Order to Show Cause and further ordered that Scotia and the Barbers were deemed to have admitted each of the following Request for Admission propounded by Plaintiffs on October 27, 2020:

> REQUEST NO. 1: Admit that Scotia asserted it could manufacture the Equipment for one million dollars as reflected on the Equipment List Scotia provided Hybrid.

> REQUEST NO. 2: Admit that on or about March 27, 2019, Scotia represented to Hybrid that it would take approximately 16 weeks to manufacture the items on the Equipment List (the "Equipment").

> REQUEST NO. 3: Admit that on or about June 13, 2019, Hybrid paid Scotia $500,000 to cover its half of the cost for the manufacturing of the Equipment.

> REQUEST NO. 4: Admit that Scotia had proposed to Hybrid that that [sic] they should purchase the Amargosa Property together as a joint venture.

> REQUEST NO. 5: Admit that Scotia never responded with any suggested alterations or an acceptance of the written joint venture agreement that Hybrid delivered to Scotia on or about August 21, 2019.

> REQUEST NO. 6: Admit that on or about September 16, 2019, Hybrid requested the return of its $500,000 investment.

> REQUEST NO. 7: Admit that as of September 16, 2019, Scotia had not yet begun manufacturing any of the Equipment.

> REQUEST NO. 8: Admit that Warren Barber represented to Johnathan

Schultz in October 2019 that Scotia had begun construction of the kiln referenced in the Equipment List.

REQUEST NO. 9: Admit that as of November 6, 2019, Scotia had not begun construction of the Equipment.

REQUEST NO. 10: Admit that Scotia has never attempted to deliver any of the Equipment to Hybrid.

REQUEST NO. 11: Admit that Scotia has never attempted to return any of the $500,000 it received from Hybrid.

REQUEST NO. 12: Admit that Scotia has never constructed or operated a carbon fines processing plant.

REQUEST NO. 13: Admit that you have never provided gold to any third party that was extracted through Scotia's processing of carbon fines.

REQUEST NO. 14: Admit that Scotia has not lost any customer due to competition from Hybrid.

REQUEST NO. 15: Admit that Hybrid has not interfered with any of Scotia's contracts with third-parties.

REQUEST NO. 16: Admit Scotia has never operated a carbon fines processing plant.

REQUEST NO. 17: Admit that when you received the $500,000 from Hybrid, that you did not have sufficient funds to invest that sum in the Hybrid-Scotia joint venture.

REQUEST NO. 18: Admit that Scotia did not have sufficient funds to pay for its 50% of the purchase price for the Amargosa Property between March 1, 2019 and December 1, 2019.

REQUEST NO. 19: Admit that to your knowledge, Hybrid has not engaged in business with any of Scotia's customers.

REQUEST NO. 20: Admit that the owner of the Amargosa Property never offered to sell the Property for less than $2 million.

REQUEST NO. 21: Admit that you did not want to enter the joint venture with Hybrid if the carbon fines processing plant was located anywhere other than the Amargosa Property.

4

REQUEST NO. 22: Admit that you have not satisfied the judgment in favor of Don David Gold because Scotia does not have the funds to do so.

REQUEST NO. 23: Admit that you did not spend all $500,000 of Hybrid's money on the manufacture of equipment for carbon fines processing plant.

REQUEST NO. 24: Admit that as of September 9, 2019 (when Warren Barber promised to pay David Swartz two $100,000 payments in exchange for a letter of authenticity for the Mandela Hands) that Scotia was under "financial duress."

15.    On May 11, 2021, Scotia and the Barbers' new attorneys filed an appearance of counsel and a motion to withdraw admissions.

16.    On August 24, 2021, the Nevada court denied Scotia and the Barbers' motion to withdraw admissions, finding that Scotia and Barbers engaged in bad-faith litigation tactics:

The reasons Defendants proffer for their inaction are, at best, insufficient to show good cause or, at worst, rooted in misrepresentations meant to mislead the Court. Defendants' lack of participation in this case, their repeated attempts to quash duly served subpoenas, and their failure to pursue their affirmative counterclaims through discovery or otherwise, demonstrate a lack of good faith throughout this litigation.

Defendants' actions in this case do not amount to good cause to excuse their failures to defend against Plaintiffs' case or prosecute their own. They have not proffered any good reasons for why they have allowed the discovery period in this case to lapse without responding to any of Plaintiffs' discovery requests or requesting any discovery to support their own affirmative counterclaims. Defendants have still not attempted to answer the outstanding discovery pending since October 2020, and they have failed to show any good cause or excusable neglect that would warrant re-opening discovery. Instead, Defendants have shown that they have not taken this litigation seriously and provide no legitimate reasons to assure the Court that they will now. They may have attempted to mislead the Court about service difficulties that appear manufactured to excuse their inactivity. No lesser sanction than deemed admissions will suffice to respond to their conduct. The Court therefore exercises its discretion to deny Scotia's request to withdraw its deemed admissions.

Doc. 83, 2:19-cv-02077-JCM-EJY (D. Nev.)

5

17.    On September 23, 2021, Hybrid filed its Motion for Summary Judgment, which sought, in-part, a $500,000 judgment against Scotia and the Barbers for intentional misrepresentation. Doc. 85, 2:19-cv-02077-JCM-EJY (D. Nev.) Hybrid's motion, which neither Scotia nor the Barbers contested, alleged several uncontested facts that the Nevada court deemed true in its order granting the motion. The uncontested facts deemed true included, in-part, the following:

a.  In 2019, Schultz came into contact with Scotia and its owners, Max and Warren, when Schultz was looking to purchase equipment to expand Hybrid's carbon fines refining business.

b.  Schultz began discussing a joint venture between Hybrid and Scotia with the Barbers, and the Barbers convinced Schultz to go to Las Vegas to see a property in Amargosa Valley ("**Amargosa Property**"), which the Barbers claimed would be perfect for carbon fines processing; and the Barbers told Schultz that the Amargosa Property could be purchased for about $1 - $1.2 million.

c.  In March 2019, Schultz traveled to Las Vegas to meet with Warren, who picked Schultz up from the airport, drove him to the Amargosa Property, and then took Schultz to his hotel. While Schultz was with Warren, they negotiated and discussed the possibility of Scotia and Hybrid entering a joint venture, which would require Schultz and his family to move to Las Vegas.

d.  As the discussions continued, the Barbers told Schultz about their expensive assets, including an airplane and cabin, flew Schultz to Utah first class, drove

Schultz around in expensive cars, and bragged about additional expensive cars that they allegedly owned. They also discussed their allegedly lucrative investments in crypto currency companies in the Bahamas backed by billions in gold they had on deposit in Dubai, etc. They gave Schultz the impression that Scotia, Max, and Warren were successful and flush with cash.

e.   The parties agreed to start the carbon fines processing facility as a joint venture. Scotia would manufacture the equipment, and the parties would split the cost of both the Amargosa Property and the equipment equally.

f.   The Barbers asserted that Scotia could manufacture equipment for a carbon fines processing plant for $1 million, as reflected on an equipment list Scotia provided Hybrid.

g.   On June 13, 2019, Hybrid paid Scotia $500,000 to cover its one-half of the equipment manufacturing costs. Hybrid paid the $500,000 before a written agreement was signed to expedite the completion of the work and the opening of the carbon fines processing plant.

h.   On August 21, 2019, Hybrid provided a written, joint venture agreement to Scotia through the Barbers, but Scotia never accepted the agreement and never provided any revisions or suggested edits.

i.   On September 16, 2019, after nearly three of the four months that Scotia claimed were necessary to complete manufacturing the equipment, Scotia had not started manufacturing the equipment. Consequently, Schultz sent an email to Scotia demanding they return the $500,000. Schultz sent the email because

of the ongoing delays and misrepresentations made by Scotia.

j.   In October 2019, Warren attempted to convince Hybrid that Scotia was nearly finished manufacturing the kiln, which was about 15-20% of the necessary equipment to operate the carbon fines processing.

k.   Scotia and the Barbers never had any intention to conduct themselves as legitimate joint venture partners.

l.   On November 6, 2019, Scotia's employee, Scott Adams, met with Schultz and revealed that Scotia had not started manufacturing any of the equipment because Scotia could not come up with any money to buy the equipment or buy land on which to build such a facility.

m.   On November 7, 2019, Schultz's attorney sent a letter to Scotia demanding the immediate return of the $500,000 or any remaining portion along with a detailed accounting regarding how the converted funds were spent.

n.   Scotia never returned any portion of the $500,000 nor provided an accounting of how the converted funds were spent or whether they were spent at all.

o.   Instead of demonstrating loyalty to the joint venture, the Barbers sought to convert the equipment payment for their own purposes in violation of the terms of the parties' verbal agreement, in breach of the Barbers' fiduciary duties, and in conscious disregard of the damages caused by their malicious, oppressive, and otherwise despicable conduct.

18.   On February 11, 2022, Scotia and the Barbers' attorneys filed a motion to withdraw.

19.     On February 16, 2022, the Nevada court granted Hybrid's Motion for Order to Show Cause, finding, "Scotia has repeatedly failed to comply with discovery obligations and Court Orders in this matter" and "despite a clear order requiring the payment of fees and costs in a specific amount within a specified period of time, Scotia ignored the Court."

20.     On February 28, 2022, the Nevada court granted Scotia and the Barbers attorneys' motion to withdraw, and they mailed a copy of the order allowing them to withdraw to Scotia and the Barbers.

21.     On March 28, 2022, Hybrid filed a Notice of Noncompliance with the Order to Show Cause and Request for Decision on Plaintiffs' Motion for Summary Judgment.

22.     On April 21, 2022, Hybrid filed its motion to enter default, strike Scotia's counterclaims, and enter judgment. Neither Scotia nor the Barbers contested the motion.

23.     On May 4, 2022, Hybrid filed a Motion to Strike Scotia's counterclaim. Neither Scotia nor the Barbers contested the motion.

24.     On September 21, 2022, the Nevada court finally entered its Order on Motion for Summary Judgment, granting Hybrid's motion for summary judgment with respect to its intentional misrepresentation claim against Scotia and the Barbers. (Document 100, Case 2:19-cv-02077-JCM-EJY).

25.     On October 4, 2022, Hybrid filed its Motion for Entry of Monetary Judgment. Neither Scotia nor the Barbers contested the motion.

26.     On March 20, 2023, the Nevada court entered its Order of punitive damages for $500,000 for intentional misrepresentation against Scotia and the Barbers, jointly and severally. Specifically, the court found, "Punitive damages for defendants' intentional misrepresentation in

the amount of $500,000 are appropriate. . . . NRS 42.005 excludes punitive damages in actions

arising from contract claims, but fraud-like claims, such as intentional misrepresentation, sound

in tort rather than contract. . . . Thus, punitive damages are awarded against all defendants for

intentional misrepresentation." (Document 107, Case 2:19-cv-02077-JCM-EJY).

## ADDITIONAL ALLEGATIONS RELATED TO WARREN'S FRAUDULENT TRANSFERS (OR ATTEMPTED TRANSFERS)

27.    Hybrid incorporated by reference all preceding paragraphs as if set forth herein.

28.    Warren and his now-deceased wife, Dorothy Barber ("**Dorothy**"), created the

Barber Family Trust dated August 29, 2012 ("**Barber Family Trust**") (aka "Warren D. and

Dorothy A. Barber Family Trust dated August 29, 2012"; aka "The Barber Family Trust dated

the 29th of August, 2012 dated December 12, 2017").

29.    The Barber Family Trust is a revocable trust.

30.    The taxpayer identification number for the Barber Family Trust is Warren's social

security number.

31.    Warren and Dorothy are the trustmakers of the Barber Family Trust.

32.    On or about August 29, 2012, Warren and Dorothy conveyed Washington County

Parcel No. GNSR-2-35-HV to "Warren D. Barber or Dorothy Anne Barber, or their Successor,

as Trustee Under Agreement with The Barber Family Trust dated the 29th day of August, 2012."

The conveyance is evidenced by the Warranty Deed recorded by the Washington County

Recorder on August 30, 2012, as Doc ID 20120028996.

33.    On or about August 29, 2012, Warren and Dorothy conveyed Salt Lake County

Parcel No. 16-33-179-007 [3] to "Warren D. Barber or Dorothy Anne Barber, or their Successor,

as Trustee Under Agreement with The Barber Family Trust dated the 29th day of August, 2012."

The conveyance is evidenced by the Warranty Deed recorded by the Salt Lake County Recorder

on August 30, 2012, as Entry 11461149 B: 10051 P: 2025.

34.     On or about October 4, 2021, Warren Barber sold that certain 2018 experimental

fixed wing, single-engine plane serial no. CCK-1865-1027 (with Aerosport CC-340 185 HP

engine), Tail No. N52WB ("**Experimental Plane**") registered to Warren D Barber to Tom Joe

Motsenbocker for approximately $222,785.00.

35.     On March 10, 2022, $119,000 of the proceeds from the Experimental Plane was

transferred from Warren and Dorothy's personal account to Dorothy's personal checking

account. (Warren still has not disclosed this transfer in his amended bankruptcy schedules.)

36.     On September 13, 2022, ENT International Limited Liability Company ("**ENT**")

was created, with the "Warren D. and Dorothy A. Barber Family Trust dated August 29, 2012"

as the sole member of ENT.

37.     On September 14, 2024, the initial meeting of the LLC was held, with Warren

being designated as President of ENT.

38.     On September 21, 2022, the Nevada court granted Hybrid's Motion for Summary

Judgment against Scotia and the Barbers for $500,000 for intentional misrepresentation.

39.     On October 4, 2022, Hybrid filed its Motion for Entry of Monetary Judgment in

the Nevada case.

40.     On or about October 8, 2022, Warren tried to place that certain Cessna 180A,

---

[3] Salt Lake County Parcel No. 16-33-179-007 is located at 3665 Millbrook Ter, Salt Lake City.

serial number 50207, Tail No. N5309D ("Cessna") out of Hybrid's reach by attempting to

transfer it to Aura X LLC under an alleged oral agreement that was voided by Judge Pehrson in

the Salt Lake Third District Court, Case No. 240902124. The Cessna was sold on September 4,

2024, pursuant to a writ of execution.[4]

      41.     On October 10, 2022, Warren sent an email to Cottonwood Title stating, "Wanted

to hire you to record a property sale from myself to an LLC." He listed Salt Lake County parcel

16-33-179-007, Washington County parcel GMSR235HV, and Daggett County parcel 0200-

2000-25.

      42.     On October 12, 2022, Warren called Candice Porter at Cottonwood Title, who

subsequently sent an email to Warren on October 12, 2022, stating:

> Hi Warren,
> Thank you for calling this morning. . . . As we discussed, we'll need to order
> property reports for each property before preparing the deeds to transfer the
> ownership to the LLC. Each report will be emailed to you for review. I
> reviewed the property details, and it appears the Salt Lake and Daggett
> County properties are currently held in the name of the Barber Family Trust
> u/a/d August 29, 2012. The Washington County property is held in your
> individual names. Please let me know if this information is not correct.
> We will need to review the Trust Agreement (where applicable) and the
> LLC authority document before preparing the deeds. Do you have your
> Trust Agreement and LLC documents in a format you can email to me for
> review? I will also need to confirm the preferred mailing address to show
> on each of the deeds. This is where the property tax notices will be sent.
> Please don't hesitate to reach out with any questions or concerns as we
> process the property reports.
>
> Thanks you,
> Candice

      43.     On or about October 17, 2022, Warren provided Cottonwood Title with a

---

[4] Unfortunately, despite being ordered to surrender the logbooks, Warren never did so, resulting in the Cessna selling at a massively discounted price at the well-attended constable sale.

notarized "Certificate of Trust for "The Barber Family Trust dated the 29th day of August, 2012

dated December 12, 2017," signed by Warren and Dorothy, which states:

1. The Trustmakers are Warren D. Barber and Dorothy A. Barber. The trust is revocable by the Trustmakers, acting jointly and not separately.

2. The Trustees of the trust are Warren D. Barber and Dorothy A. Barber. The signature of one Trustee is sufficient to exercise the powers of the Trustee. The address of Warren D. Barber, Trsutee, is 3665 South Millbrook Terrace, Salt Lake City, UT 84106.

   The address of Dorothy A Barber, Trustee, is 3665 South Millbrook Terrace, Salt Lake City, UT 84106.

. . . .

4. The tax identification number of the trust is the Social Security number of Warren D Barber.

. . . .

44.    On or about October 19, 2022, Warren provided an Accommodation Request and Indemnity Agreement" to Cottonwood Title. Warren signed the document as President of ENT. The letter purports to request Cottonwood Title record a warranty deed. The letter also acknowledges that no title insurance was requested and that Cottonwood Title was not providing any title insurance, escrow services, or legal or other professional advice, and that ENT agreed to "release, hold harmless, and indemnify Cottonwood, its employees, agents, and title insurance underwriters from and against any loss, liability, claim or damage resulting from, arising out of, or relating to the preparation, execution, delivery, or recording of the [Warranty Deed]."

45.    On or about October 19, 2022, Warren and Dorothy as Trustees of the Barber

Family Trust conveyed Salt Lake County Parcel No. 16-33-179-007 [5] to ENT. The conveyance is

evidenced by the Warranty Deed recorded by the Salt Lake County Recorder on October 20,

2022, as Entry 14031914 B: 11378 P: 4801 (2 pages). The instructions at the top left of the

warranty deed state, "Mail Recorded Deed and Tax Notice To: ENT International Limited

Liability Company, a Wyoming limited liability company, c/o Warren D. Barber and Dorothy

Anne Barber, 1309 Coffeen Avenue, Suite 6456, Sheridan, [WY] 82801."

46.     On or about October 19, 2022, Warren and Dorothy as Trustees of the Barber

Family Trust conveyed Washington County Parcel No. GMSR-2-35-HV [6] to ENT. The

conveyance is evidenced by the Warranty Deed recorded by the Washington County Recorder on

October 20, 2022, as Entry DOC ID 20220047195 (2 pages). The instructions at the top left of

the warranty deed state, "Mail Recorded Deed and Tax Notice To: ENT International Limited

Liability Company, a Wyoming limited liability company, c/o Warren D. Barber and Dorothy

Anne Barber, 1309 Coffeen Avenue, Suite 6456, Sheridan, WY 82801."

47.     On October 20, 2022, $70,745.79 of left over proceeds from Warren's

experimental plane sale was withdrawn from Dorothy's Ufirst account number ending 5799

(owned exclusively by Dorothy) payable to Warren. The cashier's check payable to Warren was

deposited back into this same account on December 10, 2022. Then on December 10, 2022,

$62,745 was withdrawn from this account as a cashier's check payable to Warren. [7] The $62,745

---

[5] Salt Lake County Parcel No. 16-33-179-007 is located at 3665 Millbrook Ter, Salt Lake
City.
[6] Washington County Parcel No. GMSR-2-35-HV is located at 1141 W 4310 S, Hurricane,
Utah.
[7] This cashier's check and subsequent cashier's check in this scheme were paid to the order
of "Dorothy A Barber or Warren Barber."

cashier's check was deposited in this same account on January 13, 2023, and a cashier's check

for $54,745 was issued payable to Warren. The $54,745 cashier's check was deposited into this

same account on February 10, 2023, followed by a new cashier's check the same day for $50,000

payable to Warren. The $50,000 cashier's check was deposited into this same account on March

9, 2023, followed by a new cashier's check the same day for $45,000 payable to Warren.

48.     On or about October 24, 2022, Warren or Dorothy submitted (or caused to be

submitted) paperwork to the Utah DMV reporting that the 2018 Maserati Levante VIN

ZN661YUL6JX284204 ("**Maserati**") was sold to ENT for $15,000 on or about February 4,

2022. Before this transfer, the Maserati was titled in the name of Dorothy Barber or Warren

Barber as shown by Utah Title No. UT006895223.

49.     On or about November 7, 2022, Warren and Dorothy conveyed their personal

interests in Washington County Parcel No. GMSR-2-35-HV to ENT. The conveyance is

evidenced by the Warranty Deed recorded by the Washington County Recorder on November 8,

2022, as Entry DOC ID 20220049355 (2 pages). The instructions at the top left of the warranty

deed state, "Mail Recorded Deed and Tax Notice To: ENT International Limited Liability

Company, a Wyoming limited liability company, c/o Warren D. Barber and Dorothy Anne

Barber, 1309 Coffeen Avenue, Suite 6456, Sheridan, WY 82801."

50.     On or about November 7, 2022, Warren provided an Accommodation Request

and Indemnity Agreement" to Cottonwood Title. Warren signed the document as President of

ENT. The letter purports to request Cottonwood Title record a warranty deed. The letter also

acknowledges that no title insurance was requested and that Cottonwood Title was not providing

any title insurance, escrow services, or legal or other professional advice, and that ENT agreed to

"release, hold harmless, and indemnify Cottonwood, its employees, agents, and title insurance underwriters from and against any loss, liability, claim or damage resulting from, arising out of, or relating to the preparation, execution, delivery, or recording of the [Warranty Deed]."

51.     On November 8, 2022, a warranty deed was recorded at the Daggett County Recorder conveying parcel 02-0020-0024 (02-0020-0025 was previously combined/merged into 02-0020-0024 to create a single .65-acre lot) by "Warren D. Barber and Dorothy Anne Barber, Trustees of the Barber Family Trust dated August 29, 2012" to "ENT International Limited Liability Company, a Wyoming limited liability company." The instructions at the top left of the warranty deed state, "Mail Recorded Deed and Tax Notice To: ENT International Limited Liability Company, a Wyoming limited liability company, c/o Warren D. Barber and Dorothy A. Barber, 1309 Coffeen Avenue, Suite 6456, Sheridan, WY 82801."

52.     On November 8, 2022, a warranty deed was recorded at the Daggett County Recorder conveying parcel 01-0094-0303 by Warren (personally) to "ENT International Limited Liability Company, a Wyoming limited liability company." The instructions at the top left of the warranty deed state, "Mail Recorded Deed and Tax Notice To: ENT International Limited Liability Company, a Wyoming limited liability company, c/o Warren D. Barber and Dorothy A. Barber, 1309 Coffeen Avenue, Suite 6456, Sheridan, WY 82801."

53.     On March 20, 2023, the Nevada court entered judgment for $500,000 for intentional misrepresentation against Warren, Max, and Scotia.

54.     On April 27, 2023, the Nevada Judgment was domesticated in Utah Salt Lake Third District Court Case No. 236911728 (the "Utah Judgment").

55.     On April 28, 2023, the Salt Lake Third District Court mailed Notice of Foreign

Judgment to Warren, Max, and Scotia.

56.     On or about May 30, 2023, an Application for Utah Duplicate Title was submitted to the Utah DMV showing that Warren purportedly sold that certain 2014 Jeep Wrangler VIN 1C4BJWFG6EL199722 ("Jeep") to ENT for $1,500.

57.     On May 30, 2023, the Utah DMV issued a new title to ENT for the Jeep.

58.     On July 31, 2023, a warranty deed was recorded at the Salt Lake County Recorder's Office conveying interest in Salt Lake County Parcel No. 16-33-179-007-0000 from "ENT International LLC, a Wyoming limited liability company" to "Jonathan and Loryn Campbell, husband and wife as joint tenants." The warranty deed dated July 20, 2023, is signed by Warren as President of ENT International and Dorothy.

59.     All causes of action identified below are plead in the alternative.

60.     Hybrid asserts that ENT is Warren's alter ego. Hybrid plans to file a motion asking the Court to grant narrow relief from stay or otherwise abstain to allow the Utah Third District Court to determine this issue.

## CAUSE OF ACTION 1
### 11 U.S.C. § 523(a)(4)

61.     Hybrid incorporates by reference all preceding paragraphs as if set forth herein.

62.     Under 11 U.S.C. § 523(a)(4), a discharge under Chapter 7, 11, or 13 "does not discharge an individual debtor from any debt for fraud . . . ."

63.     The $500,000 judgment that was entered against Warren, personally, in the United States Court for the District of Nevada, case no. 2:19-cv-02077-JCM-EJY, is expressly for fraud (intentional misrepresentation).

64.     Consequently, Warren's debt related to the $500,000 judgment (principal, post-

judgment interest, costs, and attorney's fees as applicable/appropriate) is not dischargeable.

**CAUSE OF ACTION 2**
**11 U.S.C. § 523(a)(2)(A)**

65.     Hybrid incorporates by reference all preceding paragraphs as if set forth herein.

66.     Under 11 U.S.C. § 523(a)(2)(A), a discharge under Chapter 7, 11, or 13 "does not

discharge an individual debtor from any debt for money . . . obtained by false pretenses, a false

representation, or actual fraud, other than a statement respecting the debtor's or an insider's

financial condition."

67.     Warren obtained $500,000 from Hybrid by false pretenses or representations or

by means of actual fraud.

68.     Warren was an owner of Scotia.

69.     Warren gained the $500,000 from Hybrid for his direct or indirect benefit.

70.     Hybrid lost $500,000 because of Scotia and the Barbers' false pretenses, false

representation, and/or actual fraud.

71.     Hybrid/Schultz relied on Scotia and the Barbers' representations.

72.     Scotia and the Barbers misrepresented their intention to perform contractual

duties in the joint venture.

73.     Scotia and the Barbers obtained the $500,000 through deceit, artifice, trick or

design involving direct and active operation of the mind, used to circumvent and cheat Hybrid.

74.     Amidst the threat of his assets being seized to pay the debt, Warren hatched a

scheme in which virtually all of Warren's assets were fraudulently transferred to ENT, which

Warren and Dorothy owned as trustees of the revocable Barber Family Trust—with the Barber

Family Trust being ENT's sole member. Warren's Jeep, Maserati, his marital residence in Salt

Lake County; his second residence in Hurricane, Utah; properties in Daggett County, Utah; and other property, including the proceeds of the sale of his Salt Lake County residence were transferred. Warren also concealed proceeds of his Experimental Plane by transferring proceeds to Dorothy's account then repeatedly withdrawing and depositing cashier's checks to hide the proceeds. Warren also conveyed a Cessna—previously belonging to Scotia—to Aura X LLC, a Wyoming entity Hybrid has reason to believe was created by or for the Barbers' benefit.

**CAUSE OF ACTION 3**
**11 U.S.C. § 523(a)(6)**

75.     Hybrid incorporates by reference all preceding paragraphs as if set forth fully herein.

76.     Hybrid's claim against Warren is for a debt arising from the willful and malicious injury or willful and malicious conversion of Hybrid's property.

77.     The debt procured by fraud constitutes willful and malicious injury to an entity or property of an entity.

**CAUSE OF ACTION 4**
**11 U.S.C. § 523(a)(4) Fraudulent Transfers (or attempted Fraudulent Transfers)**
**Utah Code Ann. § 25-6-202**

78.     Hybrid incorporates by reference all preceding paragraphs as if set forth fully herein.

79.     Under the Utah Uniform Voidable Transactions Act, Utah Code 25-6-102(3), "Claim" means "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."

80.     Under 25-6-102(4), "Creditor" means "a person who has a claim."

Case 24-02110    Doc 2    Filed 09/10/24    Entered 09/10/24 11:28:15    Desc Main
Document    Page 20 of 25

81.    Under 25-6-102(5), "Debt" means "liability on a claim."

82.    Under 25-6-102(6), "Debtor" means "a person who is liable on a claim."

83.    Under 25-6-102(12), "Property" means "anything that may the subject of ownership."

84.    Under 25-6-102(16), "Transfer" means "every mode, direct or indirect, absolute or conditional, or voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance."

85.    Under 25-6-103, "A debtor is insolvent if, at fair valuation, the sum of the debtor's debts is greater than all of the debtor's assets."

86.    Under 25-6-202—

> (1) A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay, or defraud any creditor of the debtor; . . . .

87.    Under 75-7-505(1) property held in a revocable trust, "is subject to the claims of the settlor's creditors."

88.    Under 75-7-103(k) "settlor" means "a person, including a testator, who creates, or contributes property to, a trust."

89.    Warren is liable to Hybrid for the unsatisfied $500,000 intentional misrepresentation judgment from the Nevada District Court, which was domesticated to Utah in Salt Lake Third District case no. 236911728.

90.    Warren is a debtor as defined herein.

91.      Hybrid is a creditor as defined herein.

92.      In September – November 2022:

(a)  A bill of sale was submitted to the FAA alleging that Warren sold the Cessna
to Aura X;

(b)  Warren and Dorothy conveyed their Salt Lake County parcel to ENT;

(c)  Warren and Dorothy conveyed their Washington County Parcel to ENT;

(d)  the $30,000+ Maserati was transferred from Warren to ENT purportedly for
$15,000; and

(e)  Warren and Dorothy conveyed their Daggett County Parcel 02-0020-0024 to
ENT;

(f)  Warren conveyed his Daggett County Parcel 01-0094-0303 to ENT.

93.      Warren transferred his interest in real property in Washington, Salt Lake, and
Daggett counties to ENT with actual intent to hinder or delay Hybrid's ability to enforce its
claim against Warren.

94.      Warren received no compensation from ENT at the time of the transfers.

95.      On or about May 30, 2023, an Application for Utah Duplicate Title was submitted
to the Utah DMV showing that Warren purportedly sold 2014 Jeep Wrangler VIN
1C4BJWFG6EL199722 ("Jeep") to ENT for only $1,500.

96.      Warren transferred the Jeep to ENT with actual intent to hinder or delay Hybrid's
ability to enforce its claim against Warren.

97.      Under Utah Code Ann. § 25-6-302(1)(b), the Jeep's transfer date was May 30,
2023, because a creditor could have acquired a judicial lien by levy on the Jeep while the Jeep

was titled in Warren's name until May 30, 2023. (Under Utah Code Ann. § 41-1a-102(12),

"Certificate of Title" means "a document issued by a jurisdiction to establish a record of

ownership between an identified owner and the described vehicle, vessel, or outboard motor.")

98.     Warren transferred the Jeep to ENT on May 30, 2023, one week after the 30-day

stay on enforcing the Hybrid's Utah Judgment against Warren.

99.     Warren transferred the Jeep to ENT without receiving reasonably equivalent value

in exchange for the transfer. (As of March 19, 2024, according to CarFax, the private party value

of the Jeep in "Good" condition is $17,050; thus, the value of the Jeep on the date of transfer

would have been more than $17,050.)

100.    Warren transferred the Maserati to ENT with actual intent to hinder or delay

Hybrid's ability to enforce its claim against Warren.

101.    Under Utah Code Ann. § 25-6-302(1)(b), the Maserati transfer date was on

October 24, 2022, because a creditor could have acquired a judicial lien by levy on the Maserati

while the Jeep was titled in Warren's name until October 24, 2022. (Under Utah Code Ann. § 41-

1a-102(12), "Certificate of Title" means "a document issued by a jurisdiction to establish a

record of ownership between an identified owner and the described vehicle, vessel, or outboard

motor.")

102.    The Nevada court had granted Hybrid's Motion for Summary Judgment only five

weeks before the Maserati was transferred to ENT.

103.    Warren transferred the Maserati to ENT without receiving reasonably equivalent

value in exchange for the transfer. (As of March 19, 2024, according to CarFax, the private party

value of the Maserati in "Good" condition is $29,950; thus, the value of the Maserati on the date

of transfer, October 24, 2022, would have been substantially more than $29,950.)

104.    Warren was insolvent when the transfers were made or became insolvent shortly

thereafter.

105.    Warren transferred his interests in the property identified herein to conceal or

otherwise place his interests in the property out of Hybrid's reach.

106.    Each of the above transfers were made to insiders.

107.    Warren essentially remained in possession or control of property identified herein.

108.    Warren has continued to demonstrate his willingness to do and say whatever he

deems is necessary to conceal, hinder, and delay or otherwise thwart Hybrid's efforts to collect

the judgment.

## CAUSE OF ACTION 5
**11 U.S.C. § 523(a)(4) Fraudulent Transfers (or attempted Fraudulent Transfers)**
**Utah Code Ann. § 25-6-203(1)**

109.    Hybrid incorporates by reference all preceding paragraphs as if set forth fully

herein.

110.    Under 25-6-203—

> (1) A transfer made or obligation incurred by a debtor is
> voidable as to a creditor whose claim arose before the transfer
> was made or the obligation was incurred if: (a) the debtor made
> the transfer or incurred the obligation without receiving a
> reasonably equivalent value in exchange for the transfer or
> obligation; and (b) the debtor was insolvent at the time or
> became insolvent as a result of the transfer or obligation.

111.    Hybrid's claim against Warren arose before the Jeep, Maserati, and real property

parcels in Washington, Salt Lake, and Daggett counties were transferred.

112.    Warren did not give reasonably equivalent value as consideration for the transfers.

23

113.    Warren was insolvent at times of the transfers or became insolvent shortly thereafter.

WHEREFORE, Hybrid respectfully asks the Court to enter an order that the debt Warren owes to Hybrid is nondischargeable.

DATE: September 10, 2024

/s/ Jonathan D. Kirk
Attorney for Hybrid

## CERTIFICATE OF SERVICE – BY NOTICE OF ELECTRONIC FILING (CM/ECF)

I hereby certify that on *September 10, 2024*, I electronically filed the foregoing Adversary Complaint with the United States Bankruptcy Court for the District of Utah by using the CM/ECF system. I further certify that the parties of record in this case, as identified below, are registered CM/ECF users and will be served through the CM/ECF system.

ADAM FORD, attorney for Warren Dunn Barber
LON JENKINS, Chapter 13 Trustee
PETER KUHN, U.S. Trustee's Office
AARON M. WAITE, Office of Utah Attorney General

## CERTIFICATE OF SERVICE – MAIL, OTHER

I hereby certify that on *September 10, 2024*, I caused to be served a true and correct copy of the foregoing Adversary Proceeding as follows:

**Mail Service - By regular first-class United States mail, postage fully pre-paid, addressed to:**
*-NONE-*

**Mail Service to Entire Matrix – By regular first-class United States mail, postage fully pre-paid, addressed to all parties who did not receive electronic service as set forth herein listed on the Official Court Mailing Matrix dated September 10, 2024 attached hereto.**
*-NONE-*

_____/s/_____

Jonathan D. Kirk